IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------X
:
ESHEREF DEMAJ,                    :    3:09 CV 255 (JGM)
Petitioner                        :
:
V.                                :
:
FRIDA SAKAJ,                      :    DATE: FEBRUARY 14, 2012
Respondent                        :
:
---------------------------------------------------------X

## RULING ON PETITIONER'S MOTION TO COMPEL

On February 11, 2009, Petitioner, Esheref Demaj, commenced this action pursuant to The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 [the "Convention"], and the International Child Abduction Remedies Act ["ICARA"], petitioning this Court for the immediate return of his three minor children to Italy, and for an immediate issuance of a show cause order to Respondent, Frida Sakaj, who Petitioner claims illegally and wrongfully removed the minor children from Italy on or about September 7, 2007, in violation of Petitioner's custodial rights under Italian law. (Dkt. #1). An Order to Show Caused issued by the late Senior United States District Judge Peter C. Dorsey the next day (Dkt. #5), and the show cause hearing was subsequently rescheduled five times at the request of counsel. (Dkts. ##8-9, 11, 13-16, 22-23, 27-28, 31-34, 39-40, 42). On March 26, 2009, Respondent filed her answer (Dkts. ##12, 17), and on April 21, 2009, Attorney Jennifer E. Davis was appointed as the guardian ad litem for the three minor children at the request of both parties. (Dkt. #20; see Dkt. #18).

On January 10, 2012, this case was referred to this Magistrate Judge (Dkt. #52), and the next day, an evidentiary hearing was scheduled for February 15-17, 2012. (Dkt. #55; see also Dkts. ##53-54, 56). In light of further developments in the case, the hearing will

commence on February 16-17, and will be continued on March 27, 2012. (Dkts. ##64, 69, 72). Following the death of Judge Dorsey, on February 6, 2012, this case was transferred to United States District Judge Vanessa L. Bryant, (Dkt. #73; see Dkts. ##74-76), and the next day, the parties consented to trial before this Magistrate Judge. (Dkt. #80).

On January 25, 2012, Petitioner filed the pending Motion to Compel Production of Documents, with brief and affidavit in support. (Dkts. ##61-63).[1] Two days later, on January 27, 2012, Respondent filed her brief in opposition (Dkt. #66),[2] in response to which Petitioner filed a reply brief four days thereafter, on January 31, 2012. (Dkt. #70).[3]

For the reasons stated below, Petitioner's Motion to Compel (Dkt. #61) is <u>granted in part and denied in part</u>.

## I. FACTUAL BACKGROUND

Immediately following the commencement of this action, Judge Dorsey issued an Order to Show Cause, which required Respondent to relinquish to the Clerk of the Court, "all travel documents, including any passports, green cards, visas, residency permits, etc. that would allow her and/or her minor children, Adelaide Demaj, Kimberly Demaj, and David Demaj, to travel and/or remain outside of the State of Connecticut." (Dkt. #5, ¶ 2). Rather than surrender these documents to the Court, the parties agreed, and Judge Dorsey ordered in Chambers, that counsel for Respondent would hold the documents of Respondent and her children in escrow. (Dkt. #62, at 2).

---

[1] Attached to Petitioner's brief are copies of the Notice of Deposition Duces Tecum directed to Respondent, dated January 4, 2012, and attachments (Exh. A); and copy of Objections to Discovery Requests, dated January 23, 2012 (Exh. B).

[2] Attached is a copy of case law.

[3] Attached as Exhibits A-C are copies of case law.

Both parties acknowledge that when Petitioner was in Connecticut in January 2010 to visit his children, Petitioner, while at a Petco store, made a statement in his native Albanian, according to Petitioner, "curs[ing]", or according to Respondent's minor child, Kimberly to whom Petitioner was speaking, "threaten[ing] to kill" Respondent and her mother. (Dkts. ##62, at 2; Dkt. #66, at 1). Thereafter, Respondent filed a police report, a warrant was issued for Petitioner's arrest, and a mandated reporter made a referral of child abuse to the Department of Children and Families ["DCF"], which resulted in a substantiated report. (Dkt. #62, at 2; Dkt. #66, at 1-2).

According to Petitioner, on August 19, 2010, Respondent applied for a U-Visa. (Dkt. #62, at 2). A U-Visa provides temporary immigration benefits to aliens who are victims of qualifying criminal activity, and to their qualifying family members, as appropriate. See http://www.uscis.gov/i-918 (Last visited Feb. 8, 2012).[4] According to Respondent, by the summer of 2010, Respondent and the minor children had lived in this country for almost three years and their original visas had expired, so as to remain here legally, Respondent applied for nonimmigrant status which was granted to her and the children in July 2011. (Dkt. #66, at 2). With the approval of their new nonimmigration status of legal permanent residents of the United States, Respondent and the children were issued Social Security cards and Employment Authorization cards, which Respondent used to obtain a Connecticut driver's license, and to register the children for Connecticut's Supplemental Nutrition

---

[4]A U-Visa may be granted to a victim and qualifying members who are the victim of qualifying criminal activity; have suffered substantial physical or mental abuse as a result of having been a victim of qualifying criminal activity; possess information concerning the qualifying criminal activity of which the applicant is a victim; a Federal, State or local government official investigation or prosecuting a qualifying criminal activity certifies that the victim has been, is being, or will likely be helpful to the official in the investigation or prosecution; and the criminal activity violated the laws of the United State or occurred in the United States or its territories.
See http://www.uscis.gov/files/form/i-918instr.pdf (Last visited Feb. 8, 2012).

Assistance Program and the healthcare program.  (Dkt. #62, at 3).

Petitioner contends that he did not learn of Respondent's change in immigration status until December 30, 2011, in response to Petitioner's filing a motion to stay in the state court divorce proceedings that Respondent initiated in 2009.  (Id.).[5]  Petitioner contends that upon information and belief, Respondent used her passport, to which she was not supposed to have access, in accordance with this Court's order, to apply for a U-Visa, and, according to Petitioner, Respondent's immigration status is relevant to this case.  (Id. at 2-3).  Further, Petitioner contends that these documents are necessary for Petitioner to address Respondent's use of the "well-settled" defense at trial, as such documents will include Respondent's allegations of abuse which Petitioner will use in his case-in-chief, and to impeach Respondent by questioning the credibility of any testimony she may provide at trial. (Dkt. #62, at 5-6).  Accordingly, Petitioner requests the production of documents concerning Respondent's U-Visa application.  (Id. at 3-6).

In her brief in opposition, Respondent argues that all of the appropriate documents, which documents include all visas, social security cards, and authorizations to work, have been produced, and the other documents withheld are those which would violate the attorney/client privilege or would violate the intent of protections found in 8 U.S.C. § 1367. (Dkt. #66, at 3-4).  Additionally, Respondent asserts that her immigration status is not an important factor to the "well-settled" defense, and Petitioner has no standing to second-guess the Department of Homeland Security ["DHS"] and its decision to grant Respondent

---

[5]According to Respondent, her disclosure was made voluntarily after Petitioner filed a motion to dismiss in the pending divorce action, contending that Respondent was here illegally and an illegal immigrant cannot file for divorce here.  (Dkt. #66, at 2).

4

a U-Visa.[6] (Id. at 4-6).

In his reply brief, Petitioner contends that courts have found "immigration status to be of utmost importance to establishing the Article 12 well settled defense[,]" and the cases upon which Respondent relies are inapposite. (Dkt. #70, at 1-3)(citations omitted). Furthermore, Petitioner responds that he is not requesting Respondent's U-Visa application to second-guess or challenge DHS' decision, but because the sworn statements of abuse made by Respondent are relevant to Respondent's credibility as a witness and may be used to impeach Respondent at trial. (Id. at 3). Moreover, Petitioner contends that the Court is entitled to see the contents of the U-Visa application in deciding whether the statements therein are consistent with the evidence presented. (Id.).

## II. DISCUSSION

### A. DISCOVERY REQUESTS

In Petitioner's Motion, he seeks to compel production of documents responsive to Request Nos. 1, 3, 4 and 5, which document requests seek documents or correspondence related to Respondent and the children's current immigration status (No. 1), and related to any changes made to their immigration status since arrival in the United States (No. 3), as well as documents and correspondence, including, but not limited to applications, affidavits and all supporting documents submitted to the Department of Homeland Security or any other Federal or State agency or officials related to their immigration status or the change therein (No. 4), and any documents or correspondence between Respondent and the

---

[6]Additionally, Respondent's counsel makes clear that Respondent has "always had copies of her passport and those of the children, as have [her] attorneys . . . ." (Dkt. #66, at 6). According to Respondent, "[t]he court order regarding passports was clearly to prevent her and the children from leaving the jurisdiction[,]" which they have not done. (Id.). Petitioner does not contest this position in his reply brief.

Department of Homeland Security or any other Federal or State agency or officials (No. 5). (Dkt. #62, at 3-4 & Exh. A).  As stated above, in response, Respondent produced all visas, social security cards, and authorizations to work, but objects to producing other documents on grounds that such production would include attorney/client privileged correspondence, and documents responsive to Request Nos. 4 and 5 as such documents would violate the intent of protections under 8 U.S.C. § 1367.  (Dkt. #66, at 3-4; see also Dkt. #62, Exh. B).

B. APPLICABLE LAW

The Hague Convention "establishes legal rights and procedures for the prompt return of children who have been wrongfully removed or retained. . . . " 42 U.S.C. § 11601(a)(4). Both the United States and Italy have adopted the Convention.  The United States enacted ICARA, 42 U.S.C. § 11601, et seq., to implement the Convention in this country.[7]  Once a petitioner establishes that the respondent wrongfully removed the children from their habitual residence,[8] the children must be returned to the country of habitual residence, unless the respondent can establish one of four defenses.  Hague Convention, arts. 12, 13. At issue in this pending motion is the application of the "well-settled" defense, which defense must be established by a preponderance of the evidence.  42 U.S.C. § 11603 (e)(2)(B). The Convention itself does not define what constitutes a child being "settled in its new environment." Hague Convention, art. 12.  However, the U.S. State Department has established that "nothing less than substantial evidence of the child's significant connections

---

[7]The Convention and ICARA are further explained by Public Notice 957 of the State Department, 51 Fed. Reg. 10494, 1986 WL 133056 (March 26, 1986).

[8]Article 3 of the Convention provides in relevant part: The removal or the retention of a child is to be considered wrongful where –(a) it is in breach of rights of custody attributed to a person . . .under the law of the State in which the child was habitually resident immediately before the removal or retention; and (b) at the time of removal or retention those rights were actually exercised, . . . or would have been so exercised but for the removal or retention.

to the new country is intended to suffice to meet the respondent's burden of proof" in asserting the well-settled defense. Public Notice 957, Text & Legal Analysis of Hague International Child Abduction Convention, 51 Fed. Reg. 10494, 10509, 1986 WL 133056 (March 26, 1986).  Several factors are considered in determining whether or not a child has become settled:

> the age of the child[;] the stability of the child's residence in the new environment[;] whether the child attends school or day care consistently[;] whether the child attends church [or other religious institutions] regularly[;] the stability of the mother's employment[;] and whether the child has friends and relatives in the new area.

Lozano v. Alvarez, No. 10-CV-8485(KMK), 2011 WL 3667444, at *28 (S.D.N.Y. Aug. 22, 2011)(citations omitted); In re Koc, 181 F. Supp. 2d 136, 152 (E.D.N.Y. 2001)(same); see also In re: Filipczak, No. 11 Civ. 1178(VM), 2011 WL 6980845, at *7 (S.D.N.Y. Dec. 23, 2011), citing Lozano, 2011 WL 366744, at *28; Matovski v. Matovski, No. 06 Civ. 4259(PKC), 2007 WL 2600862, at *13 (S.D.N.Y. Aug. 31, 2007)(multiple citations omitted)(same); Reyes Olguin v. Cruz Santana, No. 03 CV 6299 JG, 2005 WL 67094, at *8 (E.D.N.Y. Jan. 13, 2005)(citations omitted)(same); Diaz Arboleda v. Arenas, 311 F. Supp. 2d 336, 343 (E.D.N.Y. 2004)(citation omitted)(same).  To reach a finding of settled, the Court must be presented with substantial evidence of significant connections to the new environment.  Koc, 181 F. Supp. 2d at 152 (internal quotations & citation omitted).

In the bulk of cases in which immigration status is considered, it is done so after an assessment of the foregoing factors, and it is considered as only one element among many pointing either in favor of a finding of significant ties to the United States, or in finding a

lack of significant ties to the United States.[9] See e.g., In re Sasson, 327 F. Supp. 2d 489, 499-501 & n. 15 (D.N.J. 2004)(finding of well-settled when child is "well adjusted[,]" has continuous schooling, participates in extra-curricular activities, speaks English, has extended family close by, parent is holder of a O-1 artist visa, and intends to apply for permanent residency); In re Ahumada Caberera, 323 F. Supp. 2d 1303, 1314 (S.D. Fla. 2004)(finding of not settled when moved five times in two and one-half years, no other family in the United States; court noted that "any stability . . . is significantly undermined by Respondent's uncertain immigration status" which status also affects long-term employment prospects);[10] Koc, 181 F. Supp. 2d at 152-55 (child not settled because although the child lived in the U.S. for two and a half years, he moved three times, attended three different schools, did not socialize with others, did not participate in extracurricular activities, and there was uncertain immigration status). As observed last summer by U.S. District Judge Kenneth M. Karas in our sister court, "[c]ourts that have found that a child was not settled have tended to do so where . . . a child has moved frequently and therefore not had a stable living situation." Lozano, 2011 WL 3667444, at *30 (citations omitted); see also Filipczak, 2011 WL 6980846,

---

[9]Conversely, in cases in which immigration status is not mentioned, it is often the case that there is evidence of stability, and the other factors weigh strongly in favor of establishing the defense. See Matovski, 2007 WL 2600862, at *14 (a finding of well-settled when remained in the same house, same school for two years, a "stable environment[,]" participation in extra-curricular activities, attachment to extended family, consistent employment, involvement in church; no reference to immigration status); Reyes Olguin, 2005 WL 67094, at *8-9 (a finding of well-settled when in the U.S. for eighteen months, performing well in school, after trauma in the home country, engaged in a stable routine, fluent in English; no reference to immigration status); Diaz Arboleda, 311 F. Supp. 2d at 343 (finding of well-settled when in same school for over two years, mother had stable employment, friends, involved in extracurricular activities; no reference to immigration status)

[10]The district judge explained that because the child would not be threatened with the possibility of deportation if she were living in Argentina, "the Court finds that it is better for the child to return to Argentina now than for her to be deported at a later date when she has become firmly settled in the United States." 323 F. Supp. 2d at 1314, citing Koc, 181 F. Supp. 2d at 154.

at *7-8 (immigration not considered but finding of not settled when lived in multiple cities and attended multiple schools, caring and intact family in both countries, and guardian ad litem testified children are readily adaptable to any environment). In Lozano, while Judge Karas noted concern that both the Respondent and the child had overstayed their visas, and thus were here illegally, he considered the other factors referenced above which evidenced their connection to the United States, before concluding that the child was, in fact, well settled in her current environment. Lozano, 2011 WL 3667444, at *31. Following the Ninth Circuit's lead, see In re B. Del C.S.B., 559 F.3d 999, 1010-14 (9th Cir. 2009), "the idea that immigration status should render an otherwise settled child not settled" was rejected,[11] and Judge Karas concluded that "immigration status should only be a significant factor in the settled analysis if there is an immediate concrete threat of deportation." Lozano, 2011 WL 3667444, at *30, citing B. Del C.S.B., 559 F.3d at 1010-14. The rationale for this position, with which this Court agrees, is grounded in the language of the Convention. The Convention is concerned with the present as the Article 12 defense applies to a child "now settled in its new environment[,]" and the determination of the child's future well-being is left to the court conducting custody proceedings. See Hague Convention, art. 12 (emphasis added); B. Del C.S.B., 559 F.3d at 1013.

In this case, Respondent represents to the Court that she applied for and was granted

---

[11] See Alonzo v. Claudino, No. 1:06CV00900, 2007 WL 475340, at *5-6 (M.D.N.C. Feb. 9, 2007)(no steps taken to acquire legal status in the United States, no family ties to the United States; court concludes "cannot be considered 'settled' . . . considering illegal status"). While Petitioner relies on the strong language in Casimiro v. Chavez, Civil Action No. 1:06-CV-1889-ODE, 2006 WL 2938713, at *5-6 (N.D. Ga. Oct. 13, 2006), that found the child's "uncertain immigration status very troubling[,]" in that case the parties stipulated that the Respondent "cannot make the showing required by any for the foregoing affirmative defenses."

nonimmigrant status in July 2011.[12] (Dkt. #66, at 2). Even if this Court were to consider immigration status as a "most important factor" in the "well-settled" defense, the Court need only consider the status, which status is evident from the existence of the U-Visa. Thus, to the extent not already produced, on or before **February 16, 2012**, Respondent shall produce copies of their current visas.

Petitioner contends that Respondent has gained this status by obtaining a U-Visa, and thereby has "attempted to improve her litigation position through fraud . . . . " (Dkt. #62, at 5). However, in order to obtain U Nonimmigrant Status, the petitioner for such status must provide "a certification of helpfulness from a certifying agency. That means the victim must provide a U Nonimmigrant Status Certification . . . from a U.S. law enforcement agency that demonstrates that the petitioner 'has been helpful, is being helpful, or is likely to be helpful' in the investigation or prosecution of criminal activity." See http://uscis.gov/portal/site "Questions & Answers: Victims of Criminal Activity, U Nonimmigrant Status Q: What Prevents Any Foreign National From Claiming This Status By Saying They Were a Victim of a Crime?" (Last visited Feb. 9, 2012). Additionally, an application for such visa does not entitle one to such a visa. Rather, the relevant statutes and regulations leave the final decision to the discretion of the Department of Homeland Security. See 8 U.S.C. § 1101(a)(15)(U)(the Secretary of Homeland Security determines whether petitioner has fulfilled statutory criteria); 8 C.F.R. § 214.14(c)(4)(giving United States Citizenship and Immigration Service ["USCIS"] "sole discretion" to determine the "evidentiary value" of the materials submitted by a petitioner); 8 C.F.R. § 214.14(c)(5)(i) ("If

---

[12]An individual granted U Nonimmigrant status may, after three continuous years of physical presence in the United States, apply for a green card.

USCIS determines that the petitioner has met the requirements for U–1 nonimmigrant status, USCIS will approve Form I–918."). Further, as referenced above, there was a substantiated report by DCF resulting from a referral of child abuse by a mandated reporter that arose from the incident upon which Petitioner sought the benefits of a U-Visa. Thus, Petitioner's claim that Respondent "has attempted to improve her litigation position by obtaining a U-Visa through fraud . . ." is not well-taken by this Court. (Dkt. #62, at 5).

Additionally, while it would appear that claims of abuse made in Respondent's U-Visa application are relevant to Respondent's credibility as a witness and may be used to impeach Respondent's testimony at trial, disclosure of these documents for this purpose runs contrary to the intent of the protections afforded by 8 U.S.C. § 1367,[13] the purpose of which is to protect the confidentiality of the applications by preventing disclosure of these documents to alleged criminals as disclosure would allow, in this case the Petitioner, to interfere with or undermine Petitioner's immigration case.

In this case, in Request Nos. 4 and 5, Petitioner requests Respondent's copies of all documents that would be barred from disclosure by "the Attorney General, or any other official or employee of the Department of Justice, the Secretary of Homeland Security, the Secretary of State, or any other official or employee of the Department of Homeland

---

[13] 8 U.S.C. § 1367(a)(1) prohibits the use of information from spouses of battered aliens to make determinations of admissibility or deportability under Title 8; 8 U.S.C. § 1367(a)(2) bars the Attorney General or other agency personnel from using or disclosing information related to battered aliens who are the beneficiaries of an application for relief for aliens subjected to trafficking, or subjected to criminal activity, including domestic violence, see also Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386 § 1513(a)(2)(A), 114 Stat. 1464, 1533-34(2000); 8 U.S.C. § 1101(a)(15)(T), (15)(U); Violence Against Women Act of 2005, Pub. L. No. 109-162, 119 Stat. 2960 (2006)(codified at 8 U.S.C. § 1101); 8 U.S.C. § 1367(b) provides for exceptions for disclosure, none of which are applicable to this case; and 8 U.S.C. § 1367(c) provides monetary and disciplinary penalties for willful use or disclosure of information in violation of § 1367.

Security, or Department of State" under 8 U.S.C. § 1367(a)(2), but to the extent they are in Petitioner's possession, such disclosure, while arguably (see Dkt. #66, at 3-4) running afoul of the letter of this section, is not prohibited by this statute. As discussed above, Congress created the U nonimmigrant classification or U Visa in 2000 for victims of serious crimes and some of their family members. See Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106–386, § 1513(a)(2)(A), 114 Stat. 1464 (2000). A U-Visa may be granted to a victim and qualifying family members who have suffered substantial physical or mental abuse and possess information about the qualifying criminal activity, which led to a Federal, State or local investigation or prosecution, and that agency certifies that the victim is, or will likely be helpful to the investigation or prosecution.[14] See http://www.uscis.gov/files/form/i-918instr.pdf (Last visited Feb. 8, 2012). Although Petitioner asserts that he seeks this information to determine whether the statements made in the U-Visa application are consistent with the evidence presented, Petitioner also claims that Respondent secured her change in immigration status through fraud, which he seeks to establish at trial. Thus, while Petitioner may need the documents underlying and related to Respondent's U-Visa application as they may be relevant to her credibility and may be used to impeach her, in order to use these documents in that manner, Petitioner must seek to undermine the decision of DHS by challenging the veracity of Respondent's statements, upon which both DHS and law enforcement relied, thereby, interfering with Respondent's immigration case. Accordingly, Petitioner's Motion to Compel production of documents responsive to Request Nos. 4 and 5 is denied.

---

[14] See also note 4 supra.

III. CONCLUSION

For the reasons stated above, plaintiff's Motion to Compel (Dkt. #61) is <u>granted in part and denied in part</u>.

Dated at New Haven, Connecticut, this 14th day of February, 2012.


       /s/ Joan G. Margolis, USMJ
Joan Glazer Margolis
United States Magistrate Judge