IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------X
:
ESHEREF DEMAJ,                : Civ. No. 3:09 CV 255(JGM)
Petitioner                    :
:
V.                            :
:
FRIDA SAKAJ,                  : DATE: AUGUST 29, 2012
Respondent                    :
:
---------------------------------------------X

<u>RULING ON PETITIONER'S LETTER, DATED 8/28/12,
WITH RESPECT TO DR. BENJAMIN GARBER (Dkt. #149) AND
ON RESPONDENT'S MOTION IN LIMINE TO EXCLUDE
PROPOSED TESTIMONY OF DR. GARBER (Dkt. #148)</u>

The convoluted procedural history behind this highly acrimonious litigation is set forth in considerable detail in this Magistrate Judge's electronic endorsement, filed August 22, 2012 ["August 22 Order"](Dkt. #141), familiarity with which is presumed.

Shortly after the commencement of this action on February 11, 2009, Senior U.S. District Judge Peter C. Dorsey, to whom this file previously was assigned, appointed Dr. David Mantell to conduct a psychological examination of the three minor children, A.D., K.D. and D.D., at the Court's expense. (Dkts. ##13-16, 29-30, 35-37, 44-46). In light of Judge Dorsey's prolonged illness, on January 10, 2012, the file was referred to this Magistrate Judge for a recommended ruling on the pending petition, and the evidentiary hearing was scheduled for February 15-17, 2012; however, this schedule immediately was altered by Petitioner's last minute contemplation of retaining, at his own expense, and calling as a witness, Dr. Benjamin Garber, as his own expert psychologist. (Dkts. ##52-56, 67-69, 71-

72, 77, 79, 83, 88-91, 93-94, 96, 122-26, 133).[1]  Dr. Mantell testified at length, on direct examination and limited cross-examination, at the bench trial on February 16, 2012, and his expert report, dated March 22, 2010 was admitted in full for a limited purpose.  (Dkt. #96).  The oldest daughter, A.D., testified in Chambers the next day.  (Dkts. ##99,101).

Trial is scheduled to resume on September 5-10, 2012, with the two fact witnesses, Respondent and Guardian Ad Litem Jennifer Davis, and one or two of the expert witnesses, Dr. Mantell and Dr. Garber, not testifying until October 9-12, 2012, as appropriate.  (Dkts. ##123-24, 133).  As set forth in the August 22 Order, a telephonic status conference was held on August 14, 2012, at which the Magistrate Judge inquired if there was a mechanism by which the testimony of Dr. Mantell could be postponed, in order to reduce, or eliminate, further expert costs borne by the Court (which have been substantial) in this case.  (Dkts. ##127-29, 136).  Subsequently, Respondent withdrew the "Grave Risk" Defense (Dkts. ##132, 140), so that the trial is continuing only with respect to the "Well Settled" Defense and "Mature Child" Defense, which shift resulted in a small avalanche of motions filed last week, just two weeks prior to trial, on which the Court promptly ruled. (Dkts. ##135, 137-39, 141-45).

Yesterday, Petitioner's counsel sent a letter by facsimile to this Magistrate Judge's Chambers, in which he stated his intention to call Dr. Garber as an additional witness, on September 7, 2012, with respect to the "Well Settled" Defense and further that Petitioner did not intend to call Dr. Mantell as a witness or to complete his cross-examination.  (Dkt. #149).  A status conference promptly was held yesterday afternoon (Dkts. ##146-47), at which Respondent's counsel objected to Petitioner's intentions, followed by an additional three-page

---

[1]Shortly after Judge Dorsey's death, the parties consented to trial before this Magistrate Judge.  (Dkt. #80).

letter from Petitioner this morning. (Dkt. #150). According to Petitioner, Dr. Garber's testimony will pertain to whether the three children have been "coached" by Respondent. This morning, Respondent filed a Motion in Limine to Exclude the Proposed Testimony of Dr. Garber (Dkt. #148), in which she asserts that Dr. Garber has not been disclosed as an expert on the "Well-Settled" and "Mature Child" Defenses even though these defenses have been explicitly in the case since February 8, 2012, and implicitly in the case from the very beginning, given the limited possible defenses and the facts of the case; Dr. Garber's report is explicitly limited to a critique of an earlier report by Dr. Mantell and it never mentions the two defenses on which he now proposes to testify; Dr. Garber's testimony on "coaching" as it relates to the two defenses is unreliable; and Dr. Garber's testimony is based on insufficient data. (Dkt. #148, at 1-2 & Brief, at 4-8). Petitioner filed his brief in opposition to Respondent's Motion later in the day. (Dkt. #151).

In Dr. Mantell's thirty-seven page report, there is no discussion of whether it appeared to him that the Respondent had coached any of the three children.[2] During his lengthy testimony, Dr. Mantell testified briefly that from his interviews with the three children, he did not believe that they had been coached by Respondent, which is a "frequent situation" in custody disputes. He testified that it is his practice to speak with the children alone precisely to "mitigate parental influence." He testified that he is careful in determining whether he can "rule out" that possibility, looking at a number of factors, including the source of the information (is it internal or external, or a matter about which the child is unable to tell him), whether the information could be fantasy or imagined, and whether the child could have been influenced by prior conversations or interviews.

---

[2]There is a reference as to Petitioner attempting to coach A.D. not to discuss an allegedly violent incident in Italy. (At 2-3).

In his eighteen page report, dated February 1, 2012, Dr. Garber has four paragraphs addressed to potential coaching by Respondent. First, he criticizes Dr. Mantell for his "[f]ailure to evaluate competing hypotheses, e.g., that [Respondent] had scripted or otherwise prompted the children to accuse their father of abuse, as discussed below." (Exh. 73 (for ID), at 7, ¶ 5(e)). Dr. Garber then refers to Dr. Mantell's notes of 2009, which suggest that Respondent

> told the children that, "maybe we have [to] return to Italy. We like see one person. Maybe [he] can help if have say why if like stay here." In lieu of all other documentation, this introduction arguably biases the children's view of Dr. Mantell's role and thereby their presentation from their initial introduction through the entire 2010 evaluation.

(Id. at 7, ¶ 6).

Similarly, Dr. Garber questions the children's vocabulary, which he argues Dr. Mantell overlooked. Dr. Garber observed that "[s]pecifically, children whose presentation has been scripted commonly use age-inappropriate or unusual words without evidence of a real grasp of their own meaning." (Id. at 12, ¶ 4). Dr. Garber cited to eight year old K.D.'s use of the words "ashamed" and "glared," which he described as not "in common usage among elementary school children." (Id.)(footnote omitted). Thus he concluded, "In the absence of attention to these anomalies [by Dr. Mantell], another avenue to understanding these children's genuine experience is overlooked." (Id.).

During her in camera testimony on February 17, 2012 (Dkt. #99), A.D. testified that she was "not very nervous, but I think what I'm saying right now is pretty important, because it's going to affect my life." (Dkt. #101, at 23). When asked what Respondent had told A.D. about A.D.'s testimony, A.D. answered that her mother told her that "it's important[,]" that Attorney Davis was going to ask her some questions, and that A.D. did not

4

"need to feel pressured or anything." (Id. at 23-24).

The issue of potential "coaching" by the respondent-parent generally arises in the context of the federal judge's direct observation of the children when considering the "Mature Child" defense.[3] See, e.g., Andreopoulos v. Koutroulos, No. 09-cv-996-WYD-KMT, 2009 WL 1850928, at *9 (D. Colo. June 29, 2009)("I find no evidence that [the child's] testimony was coached or unduly influenced by Respondent."); Laguna v. Avila, No. 07-CV-5136 (ENV), 2008 WL 1986253, at *11 (E.D.N.Y. May 7, 2008)("[The child's] testimony did not appear forced or coached in any way."); Matovski v. Matovski, No. 06 Civ. 4259 (PKC), 2007 WL 2600862, at *15 (S.D.N.Y. Aug. 31, 2007)("[The children's] testimony is not the product of coaching or undue influence by [R]espondent."). At times, the same conclusion is reached by both the court and the court-appointed child psychologist. McManus v. McManus, 354 F. Supp. 2d 62, 69,71 (D. Mass. 2005)("[N]either I nor [the court-appointed psychologist] found indications that [the children's] testimony had been coached or otherwise unduly influenced by their father."). But see Lopez v. Alcala, 547 F. Supp. 2d 1255, 1257, 1261 (M.D. Fla. 2008)(in the context of the "Grave Risk" Defense, the court-appointed child psychologist testified that she did not think that "all of the children's statements were the result of coaching," but she recognized that "the children may be more susceptible to coaching or suggestion because they are motivated to stay in the United States with their mother."); Barrera Casimiro v. Pineda Chavez, No. Civ. 1:06 CV 1889-ODE, 2006 WL 2938713, at *7 (N.D. Ga. Oct. 13, 2006)(a child has a "tendency to be unduly influenced by

---

[3]Petitioner argues that "[c]ourts routinely decline to credit the child's testimony or apply the Article 13 mature child defense in [cases in which the child object's to being returned]." (Dkt. # 150, at 1-2 (citations omitted)).  However, as the cases cited above demonstrate, in its consideration of the "Mature Child" Defense, the issue of parental influence and "coaching" are considerations for the Court in light of all of the evidence presented.

the preferences of the parent with whom she lives.")(citations omitted); Friedrich v. Thompson, No. 1:99 CV 772, 1999 WL 33954819, at *7 (M.D.N.C. Nov. 26, 1999)(the nine-year-old child had not attained the age of "maturity" and although "Respondent may not have engaged in outright coaching of the child, the influence of the mother and other family members, as acknowledged by the child, cannot be overlooked by this Court.").

Because coaching may be one factor to be considered by the Court in evaluating the "Mature Child" Defense, Petitioner is entitled to have Dr. Garber testify on this single topic in a very limited capacity.  Specifically, Dr. Garber's testimony is limited to the opinions he expressed in his expert report regarding Dr. Mantell's assessment.  Dr. Garber, having never met either the Respondent or the children, is not qualified to testify or opine as to the ultimate issue of whether the children were coached, but rather is limited to his opinions articulated in the four paragraphs of his report in which he addressed potential coaching by Respondent, but only to the extent that issue was overlooked in Dr. Mantell's report.[4] Identical to the multiple orders entered within the past week, Respondent "should not be left to hear [Dr. Garber's] testimony for the first time when [the expert] takes the witness stand[]" at trial. (August 22 Order).[5]  Thus, Respondent, if she wishes, may depose Dr.

---

[4]In light of this Court's conclusion, Petitioner's counsel may choose not to have Dr. Garber testify, given the very limited permissible line of inquiry.

(See also Dkt. #148, Brief at 4-6 (Dr. Garber's testimony will be unreliable as he is not qualified to testify about whether the children are well-settled nor is he qualified to testify about the Mature Child Defense)).

[5]Petitioner's contention that Respondent "has repeatedly declined to depose Dr. Garber" is not well-taken as the issue of whether Dr. Garber would be permitted to testify at all was held in abeyance from January 27, 2012 when Respondent filed her Motion in Limine to Exclude Testimony of Late-Disclosed Expert (Dkt. #67), to August 17, 2012, when Respondent withdrew the "Grave Risk" Defense, upon which this Magistrate Judge denied without prejudice to renew, as appropriate, Petitioner's Motion in Limine, on grounds that upon agreement of counsel, the testimony, if any, of Dr. Mantell and Dr. Garber would not occur "until October 9-12, as appropriate." (Dkt. #133).  As Respondent appropriately notes, it was not until Petitioner's letter of yesterday, August 28, 2012, that Respondent learned of the "disclosure of Dr. Garber's new

Garber on September 7, for no more than ninety minutes, on the very tailored and limited issue articulated above, and Dr. Garber will be permitted, on September 10, 2012, to testify only as to his opinions articulated in his report, which opinions were in response to Dr. Mantell's report, again on the very tailored and limited issue articulated above.[6]

Accordingly, Petitioner's Letter, Dated 8/28/12, With Respect to Dr. Benjamin Garber (Dkt. #149) and Respondent's Motion in Limine to Exclude Proposed Testimony of Dr. Garber (Dkt. #148) are <u>granted in part and denied in part to the extent set forth above</u>.

Dated at New Haven, Connecticut, this 29th day of August, 2012.

       /s/ Joan G. Margolis, USMJ
      Joan Glazer Margolis
      United States Magistrate Judge

---

testimony" and the proposed timing of such testimony, which came "as a complete surprise to [Respondent], as it had never been suggested that Dr. Garber would speak on any subject other than his low opinion of Dr. Mantell's report." (Dkt. #148, Brief at 6-7).

[6] **If** counsel agree, the deposition may be held telephonically or by videotape. <u>See</u> note 4 <u>supra</u>. Similarly, Respondent's counsel may decide not to depose Dr. Garber given the very limited scope of permissible testimony. (<u>See</u> Dkt. #148, Brief at 7).